JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant James Chaney appeals his conviction of aggravated assault in the Cuyahoga County Common Pleas Court asserting that the verdict was against the manifest weight of the evidence. Defendant also contends that the trial court erred by sentencing him to the maximum prison term. For the following reasons, we affirm.
 {¶ 2} At trial, the following facts were established: In the early morning of June 4, 2001, Tracella Borgia was beaten with a hammer in the head, chest and lower body by the defendant.
 {¶ 3} Prior to the beating, Tracella lived in the downstairs unit of a duplex located at 3120 West 73rd Street in Cleveland, Ohio. The duplex was owned by Roger Smith, the victim's boyfriend. The defendant lived in the upstairs unit of the duplex. Roger Smith is the uncle of the defendant.
 {¶ 4} On the weekend of June 3rd and 4th, Tracella, Roger, and the defendant engaged in heavy drinking in the downstairs unit of the duplex. During the drinking binge, Tracella and defendant had an argument and Roger told the defendant to leave. Several hours later, however, defendant returned to the downstairs unit and crawled through a hole in the door. Defendant then beat Tracella with a hammer in the head, chest and lower body. Defendant left the house and fled the scene.
 {¶ 5} At approximately 1:00 a.m., Roger Smith made a 911 telephone call to the Cleveland Police Department stating that the defendant had beaten Tracella with a hammer after an argument.
 {¶ 6} Paramedic Jill Acocella responded to the scene shortly after the phone call. Upon arriving at the scene, she located Tracella lying in a pool of blood with several serious wounds to the back of her head.
 {¶ 7} Patrolman Randolph Daley of the Cleveland Police Department also arrived at the scene at approximately 1:00 a.m. He collected evidence from the scene and took photographs. He located a knife about eight to ten feet away from Tracella.
 {¶ 8} On or about July 6, 2001, defendant was arrested.
 {¶ 9} On July 26, 2001, defendant was indicted on three charges: one count of attempted murder, in violation of R.C. 2903.02 with notice of prior conviction and repeat violent offender specifications; one count of felonious assault, in violation of R.C. 2903.11; and one count of aggravated burglary, in violation of R.C. 2911.11 with notice of prior conviction and repeat violent offender specifications. Defendant entered a plea of not guilty at his arraignment and his case proceeded to a bench trial.
 {¶ 10} At trial, the State alleged that defendant purposely attempted to cause the death of Tracella after getting into an argument with her earlier in the evening. Defendant asserted self-defense.
 {¶ 11} The State first presented the testimony of the victim, Tracella Borgia. She testified that she had been drinking with Roger and the defendant for several days prior to the assault. She testified that she got into an argument with the defendant after he told her that he wanted to have sex with her. She stated that Roger told defendant to leave. She stated that later that evening, after Roger had passed out, she saw the defendant crawling through a hole in the door. She testified that she was extremely drunk and that seeing the defendant crawling through the door was the last event she remembers before waking up in Metro Hospital with severe head trauma. Finally, Tracella testified that she could not recall having a knife on her at any point during the weekend.
 {¶ 12} The State then called paramedic Jill Acocella. She testified that Tracella's injuries were life threatening and that there was a lot of blood at the scene. She testified that Roger Smith was present in the room and he was crying. She did not see the defendant at the scene. She also testified that other than the victim, no one else at the scene was treated for any injuries. Patrolman Randolph Daley of the Cleveland Police Department testified that he began to search for the defendant after talking with Roger Smith at the scene. He testified that he did not find the defendant but did observe blood throughout the upstairs unit where the defendant lived.
 {¶ 13} Detective William Miller of the Cleveland Police Department testified that he was the investigating officer assigned to the case. He testified that DNA testing revealed that the blood on the hammer was consistent with the defendant and Tracella. He also testified that the blood on the knife was consistent with the defendant.
 {¶ 14} For the defense, defendant testified on his own behalf. Defendant concedes that he got into an argument with the victim and that Roger asked him to leave the apartment. He also admits that he went back to the apartment later that evening. Defendant claims, however, that he used keys to enter the apartment and that he went back only to retrieve tools that he had left there earlier. Defendant testified that as he entered into the apartment Tracella rushed at him with a knife and stabbed him twice in the arm. Defendant stated that Tracella then began chasing him around the apartment with the knife. Defendant testified that he only grabbed the hammer to protect himself. Defendant testified that he could not get away from Tracella because he would have had to turn his back on her to get out of the door. Defendant admits that after hitting Tracella over the head with the hammer he left the apartment and fled town for a month. He stated that he only fled because he was on parole and was afraid that the police would not believe his story. Finally, defendant testified that he did not receive medical attention for his stab wound and that he never filed a police report of Tracella stabbing him.
 {¶ 15} Next, Barbara Chaney testified. She is the mother of the defendant. She testified that she saw the defendant on the night of the assault and that he was scared and remorseful for what he had done to Tracella. She also testified that she saw three stab wounds on the defendant's arms.
 {¶ 16} Finally, Denise Chaney, the sister of the defendant, testified. She stated that the defendant had asked her to go downstairs and get his tools for him prior to the assault but that she said no because she did not like to be around people drinking. She also testified that she heard loud yelling downstairs and heard the defendant yell that he had been stabbed. She testified that she saw the defendant after the assault and that he was dripping blood from several stab wounds to his arms. She testified that the defendant asked her to go downstairs and help Tracella but that she refused. Finally, she testified that the defendant was crying and upset about what had happened.
 {¶ 17} On April 25, 2002, the court acquitted defendant of the indicted charges but returned a verdict of guilty to the lesser included offense of aggravated assault, in violation of R.C. 2903.12. The trial court then sentenced defendant to the maximum sentence of 18 months of incarceration. Defendant appeals the verdict and sentence, asserting two assignments of error. Assignment of Error I states:
 {¶ 18} "I. The trial court's finding that appellant is guilty of aggravated assault is against the manifest weight of the evidence, as appellant proved the affirmative defense of self-defense by a preponderance of the evidence."
 {¶ 19} In his first assignment of error, defendant argues that his conviction for aggravated assault was against the manifest weight of the evidence. We disagree.
 {¶ 20} In a bench trial, the court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, it must be determined that the court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387. Due deference must be accorded the findings of the trial court because the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 21} Here, defendant was convicted of aggravated assault. R.C. 2903.12 defines the crime of aggravated assault and provides in pertinent part:
 {¶ 22} "(A) No person, while under the influence of sudden passion or a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause serious physical harm to another."
 {¶ 23} Defendant's argument with respect to this assignment of error is that the weight and sufficiency of the evidence required the trial court to return a not guilty verdict based on the affirmative defense of self defense.
 {¶ 24} To establish self defense, defendant must show: (1) that he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that he must not have violated any duty to retreat or avoid the danger. State v. Williford (1990),49 Ohio St.3d 247.
 {¶ 25} At trial, the court heard Tracella testify that she was very drunk on the evening of June 4, 2001; that she argued with the defendant, that the defendant was kicked out of the apartment; that she saw the defendant crawl into the apartment through a hole in the door later that evening; and that later she woke up in the hospital with severe wounds to her head from a hammer. Jill Acocella, a Cleveland paramedic, testified that Tracella was lying in a pool of blood with life threatening injuries. Detective William Miller of the Cleveland Police Department testified that he heard the 911 call placed by Roger Smith in which he stated that the defendant had beaten the victim with a hammer. Detective Miller also testified that the blood on the hammer matched the victim and the defendant. Defendant, on the other hand, testified that he used keys to enter the apartment; that Tracella initiated the attack when he entered the room; that Tracella chased him around the apartment with a knife; that he could not safely get away from Tracella; and that he used the hammer only to protect himself. Defendant's mother and sister testified that they saw the defendant after the incident and that he was suffering from stab wounds to his arms.
 {¶ 26} After reviewing the record, weighing the evidence and considering the credibility of the witnesses, we find that the court did not clearly lose its way pursuant to Thompkins, supra. We find there to be substantial, competent, credible evidence upon which the court could base its decision that the defendant was not acting in self defense at the time of the incident and was guilty of aggravated assault beyond a reasonable doubt. From the evidence adduced at trial, the court could have easily concluded that defendant used excessive force against a victim who was drunk at the time or that he did not adequately withdraw from the affray. The court was free to believe the State's witnesses over defendant and his witnesses. See State v. Thomas (Aug. 25, 1994), Cuyahoga App. No. 65300. Accordingly, we conclude defendant's conviction for aggravated assault is not against the manifest weight of the evidence.
 {¶ 27} Defendant's first assignment of error is overruled.
 {¶ 28} Assignment of Error II states:
 {¶ 29} "II. The trial court improperly sentenced appellant to the maximum sentence for aggravated assault where the record does not support the court's findings pursuant to R.C. 2929.14(C)."
 {¶ 30} In his second assignment of error, defendant maintains that the trial court erred in sentencing him to a maximum sentence of eighteen months. We disagree.
 {¶ 31} Defendant was found guilty of aggravated assault, which is a fourth-degree felony. Pursuant to R.C. 2929.14(A)(4), a trial court may impose a sentence of six to 18 months for a felony of the fourth degree. R.C. 2929.14(C) permits the court to impose the maximum term of 18 months imprisonment if it finds the offender has committed the worst form of the offense or imposes the greatest likelihood of committing future crimes. In determining the length of a sentence, the court must comply with the purposes and principles of sentencing enumerated in R.C. 2929.11, bearing in mind the seriousness and recidivism factors listed in R.C. 2929.12.
 {¶ 32} An appellate court may not disturb a sentence imposed under felony sentencing law unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. R.C. 2953.08(G)(2); State v. Garcia (1998), 126 Ohio App.3d 485, 487. When reviewing the propriety of the sentence imposed, an appellate court shall examine the trial court record, including the pre-sentence investigative report, and any oral or written statements made to or by the court at the sentencing hearing. R.C. 2953.08(F)(1)-(4).
 {¶ 33} Here, the court was aware that this was not defendant's first offense and that he had recently been released from prison at the time of this offense. The court also specifically found that the defendant had committed the worst form of the offense, due to the extreme infliction of injuries upon the victim. The record shows that the victim suffered serious physical harm from blows to her body and head with a hammer. Indeed, the injuries sustained from the blows to the victim's head required brain surgery to remove fragments of her skull that were embedded in her brain. She suffers from seizures and is partially blind and deaf as a result of the assault. Therefore, we cannot say that the sentence imposed is not supported by the record or is contrary to law. Accordingly, the trial court did not err in imposing the maximum sentence for a fourth-degree felony.
 {¶ 34} Defendant's second assignment of error is overruled.
Judgment affirmed.
ANN DYKE, P.J., and FRANK D. CELEBREZZE, JR., J., concur.